## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ABBY L. FISHER and TRACI BAHR, individually and on behalf of all others similarly situated, | : : : : | Case No: 3:25-cv-00049-FDW-DCK |
| | : | Hon.  Fank D. Whitney, Sr. |
| Plaintiff, | : : | Magistrate Judge David C. Kessler |
| | : | |
| v. | : : | |
| SNYDER'S-LANCE, INC. | : : | |
| Defendant. | : : : : | |

### FIRST AMENDED COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, Abby L. Fisher and Traci Bahr ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, hereby bring this collective action against Snyder's-Lance, Inc. ("Defendant"), to recover unpaid minimum wage compensation, unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.* ("OMFWSA") and state common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters.

### JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2.     Additionally, this Court has personal jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.     Defendant's annual sales exceed $500,000.00 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4.     The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of North Carolina and maintains a principal place of business in the state of North Carolina.

5.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant is subject to personal jurisdiction in this District.

<u>**PARTIES**</u>

7.     Plaintiff Abby L. Fisher is an adult resident of Pennsylvania and was employed by Defendant from September 17, 2022, through June 24, 2023. Plaintiff's consent to join form was filed on January 23, 2025. *See* ECF No. 1-1.

8.     Plaintiff Traci Bahr is an adult resident of Ohio and was employed by Defendant from 2014 to 2024. Plaintiff's consent to join form was filed on March 19, 2025. *See* ECF No. 8-1.

9.     Additional putative Collective members were or are employed by Defendant as hourly employees during the past three years and their consent forms will also be filed in this case.

10. Defendant is a North Carolina corporation with a principal place of business at One Campbell Place, Camden, New Jersey 08103.

11. Defendant is engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.237.

12. Defendant's registered agent for purposes of service is the Corporation Service Company located at 2626 Glenwood Ave., Suite 550, Raleigh, North Carolina 27608.

## FACTUAL ALLEGATIONS

13. Plaintiff Fisher worked for Defendant as a packer from September 17, 2022, through June 24, 2023.

14. Plaintiff Fisher worked for Defendant at its Hanover, Pennsylvania location.

15. Plaintiff Bahr worked for Defendant as a material handler from 2014 to 2024 at Defendant's Ashland, Ohio location.

16. Defendant employs packers, material handlers, machine operators, seasoning operators, and processors who work at Defendant's locations, including in Pennsylvania, California, Florida, Georgia, Illinois, Indiana, North Carolina, Ohio, South Carolina, Texas, Virginia, and Wisconsin, who are paid an hourly wage, are classified by Defendant as eligible for overtime pay (collectively referred to herein as "Hourly Packers").

17. Plaintiff Fisher's most recent base hourly rate of pay was $18.79.

18. Plaintiff Bahr's most recent base hourly rate of pay was $23.00.

19. Prior to clocking in, Defendant required Plaintiffs and the Hourly Packers to change into safety PPE, including steel toe boots, hair nets, and earplugs, which took up to 5 minutes each

shift. Additionally, Plaintiffs and the Hourly Packers were required to wash their hands and clean their safety gear before each shift, and before clocking in. This process took 2-3 minutes each shift.

20.     Similarly, before clocking back in to Defendant's timekeeping system after their meal periods, Plaintiffs and the Hourly Packers were required to wash their hands and clean their safety gear. This process took 2-3 minutes each shift.

21.     Finally, at the end of each shift and after clocking out of Defendant's timekeeping system, Plaintiffs and the Hourly Packers were required to remove their safety PPE. This process took up to 5 minutes each shift.

22.     Altogether, Plaintiffs and the Hourly Packers spent approximately 6-10 minutes per day performing the pre-, mid- and post-shift off-the-clock tasks.

23.     Defendant failed and refused to compensate Plaintiffs and other Hourly Packers for the time spent performing the pre-, mid- and post-shift off-the-clock tasks.

24.     Defendant prohibited Plaintiffs and the Hourly Packers from donning or doffing at home.

25.     Defendant required Plaintiffs and the Hourly Packers to don and doff their safety PPE in the locker rooms at their worksites.

26.     Plaintiffs and the Hourly Packers donned and doffed the same or substantially similar safety gear and PPE.

27.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and the Hourly Packers in connection with the above-described pre-, mid- and post-shift tasks, and was aware they were occurring off the clock and without compensation.

28.     The pre-, mid- and post-shift tasks performed by Plaintiffs and the Hourly Packers conferred a benefit on Defendant, and Defendant saved funds it would have spent had it paid

Plaintiffs and the Hourly Packers for the off-the-clock work.

29.     At all relevant times, Defendant controlled the work schedules, duties, protocols, assignments and employment conditions of Plaintiffs and the Hourly Packers.

30.     At all relevant times, Defendant was able to track the amount of time Plaintiffs and the Hourly Packers spent in connection with the pre-, mid- and post-shift tasks. However, Defendant failed to do so and failed to pay Plaintiffs and the Hourly Packers for all of the work they performed.

31.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the Hourly Packers in order to pressure them into performing the pre-, mid- and post-shift tasks without pay.

32.     Defendant expressly trained and instructed Plaintiffs and the Hourly Packers to perform pre-, mid- and post-shift tasks off-the-clock.

33.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Hourly Packers of wages owed for the pre-, mid- and post-shift tasks they performed. Because Plaintiffs and the Hourly Packers regularly worked 40 hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

34.     Defendant knew or should have known that the time spent by Plaintiffs and the Hourly Packers in connection with the pre-, mid- and post-shift tasks was compensable under the law.

35.     Despite knowing Plaintiffs and the Hourly Packers performed the pre-, mid- and post-shift tasks, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

36.     Depending on when the uncompensated work was performed, unpaid wages related

to the pre-, mid- and post-shift tasks described herein are owed to Plaintiffs and the Hourly Packers at the mandated overtime premium or at their standard rate of pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> **All current and former Hourly Packers who worked for Defendant at any of its facilities during the last three years.**

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

38.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the members of the FLSA Collective.

39.     Excluded from the FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

40.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation for all hours worked over 40 in a workweek.

41.     Defendant assigned and/or was aware of all of the work that Plaintiffs and members of the FLSA Collective performed.

42.     As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

> a.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for all hours worked in excess of 40 hours per workweek; and

6

b.    Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

43.    Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek and at rates that included shift premium pay.

44.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

45.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

46.    The employment relationships between Defendant and every proposed FLSA Collective member is the same. The key issues - the amount of uncompensated time to be paid for the pre-, mid- and post-shift tasks - do not vary substantially or materially among the proposed FLSA Collective members.

47.    The members of the FLSA Collective would benefit from the issuance of a Court-supervised notice of this lawsuit and the opportunity to join it.

48.    Court-supervised notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

49.    Those employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

50.    Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include thousands of workers. The precise number

of FLSA Collective members should be readily ascertainable from a review of Defendant's personnel and payroll records.

## RULE 23 OHIO CLASS ACTION ALLEGATIONS

51.     Plaintiff Bahr brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former Hourly Packers who worked for Defendant at any of its Ohio facilities during the applicable statute of limitations period in Ohio.***

(hereinafter referred to as the "Rule 23 Ohio Class"). Plaintiff Bahr reserves the right to amend the putative class definition if necessary.

52.     The members of the Rule 23 Ohio Class are so numerous that joinder of all Rule 23 Ohio Class members in this case would be impractical. Plaintiff Bahr reasonably estimates there are hundreds, if not thousands, of Rule 23 Ohio Class members. Rule 23 Ohio Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

53.     There is a well-defined community of interests among Rule 23 Ohio Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Ohio Class. These common legal and factual questions include, but are not limited to, the following:

a.  Whether the time Rule 23 Ohio Class members spent on pre-, mid- and post-shift tasks "off the clock" for each shift is compensable time; and

b.  Whether Rule 23 Ohio Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof.

54.     Plaintiff Bahr's claims are typical of those of the Rule 23 Ohio Class in that she and all other Rule 23 Ohio Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff Bahr's claims arise

from the same pay policies, practices, promises and course of conduct as all other Rule 23 Ohio Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Ohio Class members.

55.     Plaintiff Bahr will fully and adequately protect the interests of the Rule 23 Ohio Class and Plaintiff Bahr retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff Bahr nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Ohio Class.

56.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

57.     This case will be manageable as a Rule 23 Class action. Plaintiff Bahr and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

58.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

59.     Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Ohio Class and declaratory relief is appropriate in this case with respect to the Rule 23 Ohio Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former Hourly Packers who worked for Defendant at any of its facilities during the applicable statute of limitations period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

61.     The Rule 23 Nationwide Class members are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

62.     There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

   a.  Whether the time Rule 23 Nationwide Class members spent on pre-, mid- and post-shift tasks "off the clock" for each shift is compensable time;

   b.  Whether Rule 23 Nationwide Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof; and

   c.  Whether Defendant's non-payment of wages for all compensable time and regular rate violations constitutes breach of contract or unjust enrichment.

63.     Plaintiff's claims are typical of the Rule 23 Nationwide Class members' claims because Plaintiffs and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices.

Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

64.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

66.     This case will be manageable as a class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

67.     Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A.*, 559 U.S. at 398 ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

68.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule

23 Nationwide Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 .S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

69.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

70.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

71.     At all times relevant to this action, Plaintiffs and the members of the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

72.     Plaintiffs and the members of the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

73.     Plaintiffs and the members of the FLSA Collective either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

74.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the members of the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

75.     At all times relevant to this action, Defendant required Plaintiffs and the members of the FLSA Collective to perform unpaid off-the-clock work in connection with their pre-, mid- and post-shift tasks, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

76.     The off-the-clock work performed every shift by Plaintiffs and the members of the

FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

77.     In workweeks where Plaintiffs and other FLSA Collective members worked over 40 hours, Defendant failed to compensate Plaintiffs and the FLSA Collective members for the unpaid off-the-clock work time, and all other overtime, at the federally mandated rate of one and one-half times each employee's regular hourly wage. 29 U.S.C. § 207.

78.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes Plaintiffs and the members of the FLSA Collective to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly paid Plaintiffs and the members of the FLSA Collective for these work activities, but deliberately chose not to.

79.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs, reasonable attorneys' fees, and pre- and post-judgment interest.

**COUNT II**
**RULE 23 OHIO CLASS ACTION**
**VIOLATIONS OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT**
**("OMFWSA"), O.R.C. §§ 4111, *et seq.***

1.     Plaintiff Bahr re-alleges and incorporates all previous paragraphs herein.

2.     At all times relevant to this action, Defendants were subject to the mandates of the OMFWSA, O.R.C. §§ 4111, *et seq.*.

3.     At all times relevant to this action, Plaintiff Bahr and the Rule 23 Ohio Class worked for and were "employees" of Defendants in Ohio and were therefore covered by OMFWSA.

4. At all times relevant to the action, Defendants were employers covered by OMFWSA, O.R.C. § 4111, *et seq.*

5. The OMFWSA provides that employees are entitled to a minimum wage, O.R.C. § 4111.02, as well as "overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, O.R.C. § 4111.03.

6. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff Bahr and the Rule 23 Ohio Class members to perform pre-, mid- and post-shift work off-the-clock, every shift, and failed to pay these employees the minimum wage and overtime compensation to which they were entitled under OMFWSA, O.R.C. §§ 4111.02 and 4111.03, for the work they performed.

7. By failing to pay Plaintiff Bahr and members of the Rule 23 Ohio Class the minimum wage and overtime compensation to which they were entitled for performing the off-the-clock work described herein, Defendants violated OMFWSA, O.R.C. §§ 4111.02 and 4111.03.

8. Section 4111.14(A)(3) of the OMFWSA allow an employee who has not been paid minimum wage for all hours worked to bring a civil action to recover "[double] back wages, damages, and the employee's costs and reasonable attorney's fees." O.R.C. § 4111.14(A)(3).

9. Pursuant to O.R.C. § 4111.10(A), an employer who fails to pay its employees for all overtime wages outlined in O.R.C. § 4111.03 "is liable to the employee affected for the full amount of the overtime wage rate, less any amount actually paid to the employee by the employer, and for costs and reasonable attorney's fees." O.R.C. § 4111.10(A)

10. Additionally, § 4111.08 of the OMFWSA requires employers to maintain and preserve payroll records, including "the amount paid each pay period to each employee, the hours worked each day and each work week by the employee." O.R.C. § 4111.08.

11.     Defendants violated the OMFWSA, O.R.C. § 4111.08, by failing to properly maintain accurate records of all hours Plaintiff Bahr and the members of the Rule 23 Ohio Class worked each workday and within each workweek.

12.     Defendants' uniform policy and practice, as described above, was willful, intentional, unreasonable, arbitrary, and in bad faith.

13.     As a result, the Rule 23 Ohio Class has and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff Bahr and the Rule 23 Ohio Class is entitled to recover back wages, damages, attorneys' fees plus costs, interest, and other appropriate relief under OMFWSA at an amount to be proven at trial.

**COUNT III**
**RULE 23 CLASS ACTION**
**BREACH OF CONTRACT**

80.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

81.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus overtime pay for hours worked over 40 in a workweek, in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

82.     For example, Defendant offered to compensate Plaintiff Fisher at a minimum of $18.79 per hour if she agreed to perform services for Defendant as a packer. Plaintiff Fisher accepted Defendant's offer and performed under the contract by fulfilling her duties as a packer.

83.     In addition, Defendant offered to compensate Plaintiff Bahr at a minimum of $23.00 per hour if she agreed to perform services for Defendant as a material handler. Plaintiff Bahr accepted Defendant's offer and performed under the contract by fulfilling her duties as a

material handler.

84.     Evidence of these contracts include Defendant's letters offering employment, pay statements, Defendant's Employee Handbook and other documentary evidence in Defendant's possession.   Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for work, which Plaintiffs accepted and performed, including the unpaid pre-, mid and post-shift tasks described herein, but Defendant failed to perform by paying Plaintiffs and the Rule 23 Nationwide Class members the promised wages for all work.

85.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate within the applicable period.

86.     Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with the pre-, mid- and post-shift tasks described herein.

87.     Defendant breached its contractual promises by failing to pay Plaintiffs and the Rule 23 Nationwide Class members at their fixed, agreed upon hourly rate for *all* of the hours worked.

88.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

89.     Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically

the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

90.     Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them ***more*** than the federally mandated minimum wage of $7.25 per hour, but less than 40 hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

91.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

92.     As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

### COUNT IV
### RULE 23 CLASS ACTION
### UNJUST ENRINCHMENT

93.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

94.     This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

95.     At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established hourly rate in consideration for the work duties Plaintiffs the Rule 23 Nationwide Class members performed for the benefit of Defendant.

96.     Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established hourly rate and performed by doing their jobs and carrying out their required work duties.

97.     Defendant received a benefit from the mandatory pre-shift work in that these services allowed Defendant to ensure their data and client security.

98.     Despite this, Defendant did not pay Plaintiffs and the Rule 23 Nationwide Class members for these services.

99.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the mandatory pre-, mid- and post-shift tasks performed each shift, Defendant was unjustly enriched. Defendant was also unjustly enriched by failing to pay all wages owed to Plaintiffs and the Rule 23 Nationwide Class by not paying their overtime rate when off-the-clock work caused the Rule 23 Nationwide Class to exceed 40 hours per work week.

100.    Plaintiffs and the Rule 23 Nationwide Class members performed mandatory pre-shift work activities and overtime at the request of, without objection by, and for the benefit of Defendant.

101.    Defendant received and accepted the overtime and pre-, mid- and post-shift work from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

102.    Upon information and belief, Defendant used the monies owed but not paid to Plaintiffs and every Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

103.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class members performed for Defendant's benefit without having paid Plaintiffs and the Rule 23 Nationwide Class members for the same.

104.    Plaintiffs and the Rule 23 Nationwide Class members suffered detriment due to Defendant's failure to pay them for the mandatory pre-, mid- and post-shift tasks described herein,

in that Plaintiffs and the Rule 23 Nationwide Class members were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

105.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

a.    Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiffs a list of all current and former Hourly Packers who worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone numbers of each such person, so that Plaintiffs can give those individuals notice of this action and an opportunity to make an informed decision about whether to join and seek to recover their unpaid wages;

b.    An Order designating Plaintiffs as representatives of the FLSA Collective, and the undersigned as counsel for the same;

c.    An Order certifying this action (for the Rule 23 Ohio Class) pursuant to Rule 23(b)(3) with respect to Plaintiff Bahr's Ohio state law claims (Count II).

d.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

e.    A complete accounting of all the compensation Plaintiffs and all others similarly situated are owed;

f.    An Order declaring Defendant violated the FLSA;

g.    An Order declaring Defendant's violations of the FLSA were willful;

h.    An Order declaring Defendant violated Ohio wage and hour law;

i.    An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre-, mid- and post-shift tasks described herein at a pre-established (contractual) regularly hourly rate;

j.      An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 Ohio Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

l.      A monetary judgment awarding full back pay and an equal amount in liquidated damages;

m.      An award of pre- and post-judgment interest;

n.      An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of service payments to the named Plaintiff; and

o.      Such other and further relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand a trial by jury on all issues in this Complaint that are so triable as a matter of right.


Date: April 18, 2025                    Respectfully submitted,

/s/ *Kevin J. Stoops*
Kevin J. Stoops (P64371) (*pro hac vice*)
Ethan Goemann (NC Bar No. 50731)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
egoemann@sommerspc.com

James J. Mills (NC Bar No. 36529)
Burns, Day & Presnell, P.A.
P.O. Box 10867
Raleigh, North Carolina 27608
(919) 782-1441
jmills@bdppa.com

Jonathan Melmed (CA SBN 290218) (*pro hac vice application forthcoming*)
Meghan Higday (332908) (CA SBN 334626) (*pro hac vice application forthcoming*)
**MELMED LAW GROUP, P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
mh@melmedlaw.com

*Attorneys for Plaintiffs and the Proposed Collective*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Ethan C. Goemann (NC Bar No. 50731)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: kstoops@sommerspc.com
Email: egoemann@sommerspc.com